**WO**

NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Josephine Borchardt,<br><br>    Plaintiff,<br><br>v.<br><br>Harkins Fashion Square LLC,<br><br>    Defendant. | No. CV-17-01727-PHX-DJH<br><br>**ORDER** |

This matter is before the Court on Defendant's Motion for Summary Judgment.[1] (Doc. 39). Plaintiff filed a Response and Defendant filed a Reply. (Docs. 45 and 47). The parties stipulated to, and the Court approved, a 90-day extension for Plaintiff to file her Response. (Doc. 43). Notwithstanding that lengthy extension, the Court notes that Plaintiff was late in filing her Response.

**I.  Background**

Plaintiff was originally represented by Joshua Carden, who filed the Complaint. The Court granted Mr. Carden's Motion to Withdraw as Counsel, citing irreconcilable differences, on October 1, 2018. (Doc. 41). Plaintiff filed a Notice to Proceed Pro Se on November 15, 2018. (Doc. 44). Plaintiff asserts two causes of action in her Complaint, both alleging violations of Title VII of the Civil Rights Act of 1964. (Doc. 1). Count One alleges that Defendant failed to stop sexual harassment of Plaintiff by co-workers, and

---

[1] Oral argument was requested on the Motion. The Court denies the request because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed.R.Civ.P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

Count Two alleges that Defendant retaliated against Plaintiff initially by reducing her hours and subsequently by terminating her after she complained about the alleged harassment and filed an EEOC claim. (*Id.*)

Plaintiff commenced employment with Defendant Harkins as a barista at the Harkins Movie Theater in Fashion Square Mall in January 2016. (DSOF ¶¶1-2). Plaintiff started working as a bartender about a month later. (*Id.*) Plaintiff alleges that she was harassed by a few different individuals at work. Mikyle Calovich ("Calovich"), a fellow bartender, allegedly told Plaintiff she should not do inventory because she is a woman. (DSOF ¶17). Plaintiff reported this comment to General Manager Patty McHale ("McHale") in April 2016. (DSOF ¶18; Doc. 1 at 2). Although Plaintiff alleges that McHale dismissed the concerns about Calovich, Plaintiff acknowledges that Calovich was terminated in July 2016. (Doc. 1 at 3).

Plaintiff also alleges that bartender Luis Banuelos ("Banuelos") made sexual gestures toward her, massaged her neck and back on multiple occasions, and made comments of a harassing nature directly to her and through text messages. (Doc. 1 at 4). Plaintiff acknowledges that she did not report any of this behavior to her supervisor or to anyone else in management. (Doc. 40-1 at 32). Moreover, Plaintiff never asked Banuelos to stop massaging her back on the dozens of occasions he allegedly massaged her. (*Id.*)

Plaintiff also alleges harassment stemming from a confrontation with a male bartender after he failed to ID a customer purchasing alcohol. (Doc. 1 at 3). Plaintiff reported that conduct to a co-worker, who told supervisor Caroline Kaiser ("Kaiser"). (*Id.*) Plaintiff alleges that Kaiser told her that questioning the male employee in front of customers was "emasculating" and "essentially chopping off his balls." (DSOF ¶ 17). Plaintiff alleges that this comment was made in September 2016, but that she did not report it until November 15, 2016. (DSOF ¶ 19). Plaintiff alleges that her hours were reduced following this incident. (Doc. 1 at 4).

At all times during Plaintiff's employment, Defendant had a no-tip policy, which discouraged customers from tipping. (DSOF ¶ 5). If a customer insisted on leaving a tip,

the bartenders were to type the tip amount into the system and place the money into the register. Defendant donated the tips to charity. (DSOF ¶ 6). Plaintiff was unclear as to where the tips went after they were put into the cash register, but understood that she was not allowed to keep tips. (DSOF ¶ 7). On November 20, 2016, Plaintiff's cash register was $14 short, prompting a review of surveillance video footage. (DSOF ¶¶ 8-9). Kaiser observed Plaintiff and another bartender, Kathryn Sensibaugh, pocketing cash tips that day. (DSOF ¶¶ 10-11). In her deposition, Plaintiff admitted to violating the tip policy by pocketing cash tips on "two or three" occasions around November of 2016. (Doc. 40-1 at 17).

Plaintiff filed an EEOC claim of sex discrimination on December 2, 2016, shortly after Defendant began its investigation into the stolen tips. (Doc. 1-1; DSOF ¶ 14). Defendant terminated Plaintiff on December 15, 2016, for violating the company's policy on tips, which is defined as "theft" in the employee handbook.[2] (DSOF ¶ 15). Plaintiff filed a second EEOC claim for retaliation and this case followed. (Doc. 1).

## II. Summary Judgment Legal Standards

The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986); *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). The materiality requirement means "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Substantive law determines which facts are material. *Id.* The dispute must also be genuine, meaning the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 242. The Court determines whether there is a genuine issue for trial but does not weigh the evidence or determine the truth of matters asserted. *Jesinger*, 24 F.3d at 1131.

The moving party bears the initial burden of identifying the portions of the record,

---

[2] Employee Sensibaugh, also caught on tape stealing tips, was also terminated. (Doc. 40-1 at 71-73).

- 3 -

including pleadings, depositions, answers to interrogatories, admissions, and affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. If the moving party meets its initial burden, the opposing party must establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-586 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party. *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249-250. However, the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

### III. Sexual Harassment Claim

In Count One, Plaintiff claims that Defendant failed to stop harassing behavior of a sexual nature, which cultivated a hostile work environment.

Title VII of the Civil Rights Act of 1964 prohibits discrimination on the basis of sex, which includes sexual harassment. 42 U.S.C. § 2000e–2(a)(1). "A plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). "To survive summary judgment, the respondent must submit cognizable evidence sufficient to establish a jury question on whether the victim (1) was subjected to verbal or physical conduct of a sexual nature, (2) that was unwelcome; and (3) that was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *E.E.O.C. v. Prospect Airport Servs., Inc.,* 621 F.3d 991, 997 (9th Cir. 2010). To satisfy the third element, a plaintiff must prove that her workplace was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Nichols v. Azteca Rest. Enterprises, Inc.,* 256 F.3d 864, 871–72 (9th Cir. 2001) (citing *Faragher v. City of Boca Raton,* 524 U.S. 775, 787, (1998). Where an employee is allegedly harassed by a co-worker, an employer may be liable if they knew of the harassment but failed to take action "reasonably calculated to end the harassment." *Nichols,* 256 F.3d at 875.

Plaintiff's sexual harassment claim is based on the following allegations: (1) co-worker Calovich stated that Plaintiff shouldn't have to do inventory because she is a woman; (2) with respect to Plaintiff's request that her co-worker ID customers, Kaiser told Plaintiff that she was "essentially chopping off his balls;" and (3) co-worker Banuelos made sexual comments and gestures to Plaintiff and massaged her neck and back. (Doc. 1). In her Response, Plaintiff also states that she was a victim of racial discrimination from Calovich. (Doc. 45). While there is a single mention of racial comments being made in the Complaint, there is no claim for race-based discrimination, and therefore the Court will not consider this argument.

As an initial matter, Plaintiff did not directly respond to any of Defendant's statements of fact, rather submitting a document in response that restates the allegations in her Complaint. (Doc. 46). Nor did Plaintiff provide any admissible evidence or declaration to rebut any of Defendant's facts. Therefore, the Defendant's Statement of Facts that are supported by evidence must be accepted as true. *See* LRCiv. 56.1(b).[3] Likewise, Plaintiff did not cite any legal authority in her Response.

### A. Allegations against Calovich

Plaintiff alleges that Calovich made a demeaning remark to Plaintiff, that McHale did not take her concerns seriously, and that those actions created a hostile work environment. However, it is undisputed that as a result of Plaintiff's complaint, Calovich was initially suspended from employment by McHale. (DSOF ¶ 26). Moreover, Plaintiff agrees that she made a second complaint regarding Calovich on June 23, 2016, and acknowledges that Calovich was terminated soon thereafter. (Doc. 1 at 3; Doc. 45 at 2).

There is no evidence in the record to establish that the events related to Calovich

---

[3] "Any party opposing a motion for summary judgment must file a statement, separate from that party's memorandum of law, setting forth: (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed; and (2) any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party. Each additional fact must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support."

created a hostile work environment that was not addressed by Defendant. It is undisputed that Calovich was terminated shortly after Plaintiff made a complaint to HR.[4] *See Nichols,* 256 F.3d at 875. Plaintiff has not established the existence of a genuine dispute as to any material fact for trial as to the allegations against Calovich and McHale.

### B. Allegations against Kaiser

Plaintiff alleges that after confronting a co-worker about his failure to ID customers, her supervisor, Kaiser, told her that questioning the male employee in front of customers was "emasculating" and "essentially chopping off his balls." (DSOF ¶ 17). Plaintiff states that this comment was made sometime in September 2016, but she did not report it until November 15, 2016. (DSOF ¶ 19). Plaintiff argues that Kaiser's comments contributed to a hostile work environment.

While Plaintiff does not provide any evidence to establish that Kaiser made this remark, the Court will presume the statement was made for purposes of this Motion. Taking Plaintiff's allegation as true with respect to the crude comment made by Kaiser, this statement on its own, while inappropriate, does not create a hostile work environment for purposes of a harassment claim. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998) ("A recurring point in these opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.") (internal citations omitted). Plaintiff has not provided any evidence to raise a question of material fact as to Kaiser. This isolated incident does not support Plaintiff's claim for sexual harassment.

### C. Allegations against Banuelos

Plaintiff alleges that bartender Banuelos made sexual gestures toward her while at work. (Doc. 1 at 4). In her deposition, she further alleged that Banuelos massaged her neck and back on multiple occasions, and that he made comments of a harassing nature to her and through text messages. (Doc. 40-1 at 20). Plaintiff acknowledged in her deposition

---

[4] In her Response, Plaintiff also argues that Calovich "referred to Ms. Borchardt's racial identity, Mexican, as having said worse because of her racial and ethnic background." (Doc. 45 at 1). As stated previously, there is no claim for racial discrimination in the Complaint.

- 6 -

1    that she did not report any of the behavior related to Banuelos. (Doc. 40-1 at 32). Moreover, Plaintiff stated that she did not ever ask Banuelos to stop massaging her back or neck. (*Id.*) Importantly, Plaintiff has not presented any evidence that Defendant was aware of the alleged conduct of Banuelos.

To survive summary judgment, Plaintiff must submit evidence sufficient to establish that she was subjected to unwelcome verbal or physical conduct of a sexual nature sufficiently severe or pervasive to alter the conditions of her employment. *See E.E.O.C. v. Prospect,* 621 F.3d at 997. To satisfy the third element, a plaintiff must prove that her workplace was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Nichols,* 256 F.3d at 871–72.

Taking the facts in the light most favorable to Plaintiff, the Court assumes that Banuelos did subject Plaintiff to verbal or physical conduct of a sexual nature. However, there is no evidence in the record to establish the conduct was unwelcome. Conceivably, the alleged conduct of Banuelos would be objectively harassing to a reasonable person. However, Plaintiff has not presented evidence that she was subjectively offended by his conduct, rather she conceded that she never asked Banuelos to stop massaging her. (Doc. 40-1 at 32). Moreover, there is no evidence that the conduct was pervasive enough to alter the conditions of her employment. Plaintiff has not argued or presented evidence that Defendant was or should have been on notice about the alleged harassment. Rather, Plaintiff stated in her deposition that she did not report the conduct. In her Response, Plaintiff argues *for the first time* that she made an assistant manager aware of Banuelos's conduct. (Doc. 45 at 5). Even if this argument was supported with a sworn declaration from Plaintiff, which it is not, this statement is in direct contradiction to her own sworn deposition testimony. *See Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) ("[A] party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.").

Plaintiff has not presented "cognizable evidence sufficient to establish a jury

question" as to any of the above claimed instances of sexual harassment. Nor has Plaintiff established a "severe or pervasive" alteration of the conditions of her employment, or contested any of Defendant's facts or evidence. Therefore, there is no dispute of material fact and Plaintiff's Title VII sexual harassment claim fails as a matter of law.

## IV. Retaliation Claim

To succeed on a retaliation claim under Title VII, a plaintiff must prove "that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). Initially, the burden rests with the plaintiff to establish a *prima facie* case of retaliation. *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802 (1973). To establish a *prima facie* case, a plaintiff must show "(1) a protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034–35 (9th Cir. 2006). An action is cognizable as an adverse employment action if it is based on a retaliatory motive and is reasonably likely to deter employees from engaging in protected activity. *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000). In other words, only "non-trivial" employment actions can ground a retaliation claim at the *prima facie* stage. *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000); *see also Kunzler v. Rubin*, 2001 WL 34053243, at *7 (D. Ariz. Sept. 27, 2001).

If the plaintiff establishes a *prima facie* case, "the burden shifts to the defendant 'to articulate some legitimate, [nonretaliatory] reason' for the adverse action." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802). The defendant need not prove the absence of retaliatory intent or motive; it simply must produce evidence sufficient to dispel the inference of retaliation raised by the plaintiff. *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982). If the defendant does so, "the plaintiff must show that the articulated reason is pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'"

*Chuang v. University of California Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000) (quoting *Burdine*, 450 U.S. at 256). The goal of the pretext inquiry is not to determine whether defendant made the best employment decisions or even well-considered ones. *See Green v. Maricopa County Cmty. Coll. Sch. Dist.*, 265 F. Supp. 2d 1110, 1128 (D. Ariz. 2003). Rather, the goal is to determine the extent to which defendant's explanation of its actions is a guise for unlawful retaliation. *See Ekweani v. Ameriprise Fin., Inc.*, 2010 WL 481647, at *8 (D. Ariz. Feb. 8, 2010). In this final analysis, the plaintiff "must do more than establish a *prima facie* case and deny the credibility of the [defendant's] witnesses." *Schuler v. Chronicle Broadcasting Co. Inc.*, 793 F.2d 1010, 1011 (9th Cir. 1986).

Plaintiff alleges that she was retaliated against while still working at Harkins, because her supervisors had a poor attitude and reduced her hours, and because she was terminated for filing an EEOC claim.

### A. Allegations of Adverse Treatment

Plaintiff alleges that following the incident related to the failure to ID customers, Kaiser spoke to her with "more of a harsh tone." (DSOF ¶ 25). However, this type of action does not rise to the level of unlawful retaliation, as Plaintiff does not allege that this action dissuaded her from making a report of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.") (internal citations omitted). As Plaintiff filed an EEOC complaint *after* this alleged adverse treatment, the Court finds that Plaintiff was not materially affected by the alleged conduct. Therefore, the Court finds this to be a "non-trivial" employment action. *See Brooks*, 229 F.3d at 928.

Plaintiff also alleges that her work hours were reduced after she complained about Calovich. However, this allegation is contradicted by Plaintiff's deposition testimony, where she stated she was dissatisfied with the number of hours she was scheduled to work prior to the time she made any complaints to management. (Doc. 40-1 at 44). She further

stated, referencing her co-workers, that "everybody at this time was upset over the scheduling." (*Id.*) There is also evidence to support that Plaintiff's hours were reduced because her availability decreased, due to attending classes at Arizona State University and because she was studying for the LSAT. (Doc. 40-1 at 12). Plaintiff does not dispute these facts. Therefore, as to her allegations of adverse treatment, Plaintiff has not established a *prima facie* case of retaliation.

### B. Termination

Plaintiff alleges, without providing any evidence, that her termination was in retaliation for her reports to management and for filing an EEOC claim, and that the tip policy violation was pretextual. Defendant contends that the violation of the tip policy was the sole reason for Plaintiff's termination.

Plaintiff alleges that she engaged in a protected activity (filing an EEOC claim), that she received an adverse employment action (termination after filing the EEOC claim), and that there was a causal link between the two. Plaintiff does not provide evidence of the causal link, only inferring that the timing of the termination is suspect. However, temporal proximity, without more, is insufficient to establish pretext. *See Behan v. Lolo's Inc.*, 2019 WL 1382462, at *6 (D. Ariz. Mar. 27, 2019) (holding that timing alone "is not enough to create a triable issue of pretext"), *appeal dismissed*, 2019 WL 3384891 (9th Cir. June 12, 2019). Plaintiff does not provide evidence to rebut the facts established by Defendant, and therefore, Plaintiff has not established that her EEOC claim was the "but-for cause" of her termination. *See Nassar*, 570 U.S. at 362.

Likewise, even assuming Plaintiff could establish a causal connection, her claim would fail. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282 (9th Cir. 2000) ("the establishment of a *prima facie* case based on the minimum evidence necessary to raise a presumption of discrimination does not preclude summary judgment."). If the plaintiff establishes a *prima facie* case, "the burden shifts to the defendant to articulate some legitimate, [nonretaliatory] reason for the adverse action." *Burdine,* 450 U.S. at 253 (internal citations omitted). "The employer's articulation of a facially nondiscriminatory

reason shifts the burden back to the plaintiff to show that the employer's reason was a pretext for discrimination." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998), as amended (Aug. 11, 1998).

Here, Defendant articulated non-retaliatory reasons for terminating Plaintiff. Although Plaintiff alleges that Defendant's decision to fire her was a "false allegation of tip theft," Plaintiff admitted to violating company policy and pocketing cash tips. (Doc. 40-1). While Plaintiff alleges in her Complaint that other employees also pocketed tips and that Defendant "routinely made exceptions" to the tip policy, Plaintiff cites no evidence to support her argument. (Doc. 1 at 6). Plaintiff does not put forward any admissible evidence or declarations to rebut Defendant's evidence that her termination was not pretextual, and there is no evidence in the record to rebut Defendant's non-discriminatory reason for her termination. Plaintiff's claim fails.

**V. Conclusion**

Plaintiff has not established a claim for sexual harassment under Title VII of the Civil Rights Act of 1964. Nor has Plaintiff established a *prima facie* case of retaliation. Therefore, Plaintiff's claims fail as a matter of law, and Defendant's Motion for Summary Judgment will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 39) is **granted**. The Clerk of Court shall kindly enter judgment accordingly and terminate this matter.

Dated this 16th day of September, 2019.

Honorable Diane J. Humetewa
United States District Judge